UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

AMY NEELY and DAVID NEELY
Individually and on Behalf of J.N., et al.                                         PLAINTIFFS

V.                                                              CIVIL ACTION NO. 3:21-CV-786-DPJ-ASH

GREAT ESCAPES PELAHATCHIE, LP,
d/b/a Jellystone Park Yogi on the Lake, et al.                                    DEFENDANTS

ORDER

After seven children caught a dangerous strain of the *E. coli* bacterium, they and their families sued a water park and related entities, alleging the infection came from the park's pools. Defendant Ricky Jenkins is an entrepreneur who effectively owns several of the Defendant businesses. Jenkins moves [418] for summary judgment, which the Court grants.

I.   Background

All Plaintiff children tested positive for the *E. coli* O157:H7 bacterium after swimming in the pools at a campground called Jellystone Park Yogi on the Lake. The corporate structure behind Jellystone is slightly complicated but relevant to Jenkins's motion.

Great Escapes Pelahatchie, L.P. (GEP) purchased Jellystone after Jenkins, a self-described entrepreneur, identified it for acquisition. Jenkins Dec. ¶ 3. GEP's general partner is Great Escapes Pelahatchie Management, LLC (GEPM), and Jenkins is GEPM's sole member. *Id.* ¶ 5. TJO 10x10 Management, L.P. (TJO Mgmt.) operates the Park, *id.* ¶ 7; Jenkins Dep. [418-2] at 7, and Jenkins is one of its general partners. Jenkins Dec. [418-1] ¶ 6. All three companies are Defendants who have separately moved for summary judgment.

Plaintiffs sued Jenkins individually, but there is some confusion over the nature of the pleaded claims. Jenkins read the Second Amended Complaint (SAC) as asserting a claim that

"he is personally liable because he was a 'de facto owner[ ]' and is an 'alter ego' of GEP and GEPM." Jenkins Mem. [419] at 1 (alteration in original). Plaintiffs acknowledge pleading that theory, but they now abandon all claims based on alter ego, veil piercing, or premises liability. Pls.' Resp. [456] at 2. In short, they concede every argument Jenkins made in his opening memorandum.

Plaintiffs insist, however, that Jenkins misread their pleadings and overlooked the "central claim" that he is "personally" liable, "not derivatively [liable] as a member/owner of any of his businesses." *Id.* at 1. According to them, Jenkins had a common-law duty to act reasonably, which he breached by "failing to take any step, measure, or action to ensure that the water attractions at the subject park . . . were safe." *Id.* They also argue that Jenkins's failure to address this central claim in his opening brief waives his right to summary judgment as to it. *Id.* at 2.

Whether Plaintiffs ever pleaded a separate claim for personal liability is the threshold question. But even if they did, the next question is whether Jenkins is entitled to summary judgment anyway, something the parties addressed in a reply [486], surreply [497], and surrebuttal [500].

II.     Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals no genuine dispute over any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case[] and on which

2

that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion[] and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Catrett*, 477 U.S. at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). It must "interpret all facts and draw all reasonable inferences in favor of the nonmovant." *EEOC v. Rite Way Serv.*, 819 F.3d 235, 239 (5th Cir. 2016); *accord Tolan v. Cotton*, 572 U.S. 650, 660 (2014). But conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)); *accord Little*, 37 F.3d at 1075.

III. Discussion

Plaintiffs concede dismissal of all derivative claims against Jenkins based on alter-ego theories or veil piercing, and they also concede their premises-liability claim against him. Pls.' Resp. [456] at 2. So the only issue left for Jenkins is whether he is personally liable for his own

3

alleged acts or omissions. Before addressing that, the Court must consider whether Plaintiffs ever pleaded a personal-negligence claim against him.

      A.      Does the SAC State a Personal-Negligence Claim Against Jenkins?

Whether Plaintiffs pleaded a personal-negligence claim against Jenkins is important for two reasons. First, if Plaintiffs failed to plead this claim, then they may be precluded from raising it for the first time in response to Jenkins's summary-judgment motion. *Jackson v. Gautreaux*, 3 F.4th 182, 189 (5th Cir. 2021) (noting that courts may dismiss claims raised for first time in response to dispositive motion). Second, if they did plead it, then they say Jenkins has waived his right to address the claim in his summary-judgment reply because he failed to mention it in his opening memorandum. Pls.' Resp. [456] at 2.

The SAC repeatedly alleges that "Defendants GEP and GEPM were alter egos of Defendants TJO 10x10, and Ricky Jenkins *individually*." SAC [407] at ¶ 13 (emphasis added); *see also id.* ¶¶ 43, 64, 67, 85, 94, 179, and 190. Still, Plaintiffs say that in paragraph 165 of the SAC, they pleaded a valid claim against Jenkins for personal rather than derivative liability. That paragraph is found in Count I (general negligence) and states:

> Defendants Ricky Jenkins, TJO, and TJO 10x10, as the **entities** responsible for the acquisition and development of recreational water facilities nationally, knew or should have known the risks associated with recreational water and **failed to review or assess** the policies and procedures relating to water quality at the time that they acquired the franchise; **failed to ensure** that the companies they formed to formally own and operate the parks, including GEP at the subject park, were adequately staffed with employees knowledgeable about the risks; and **failed to ensure that GEP was adequately staffed** and otherwise prepared to operate the recreational water facilities in a safe manner. These defendants engaged in this conduct even despite having express knowledge, as stated by Kelly Jones, that the State of Mississippi would not inspect these facilities for compliance with any regulatory standards.

(Emphasis added.) Plaintiffs cite no other paragraphs as pleading individual liability.

To begin, there are only two counts asserted against Jenkins, this one and the now conceded premises-liability claim in Count II. Count II seems to be a derivative claim as to Jenkins that would make him the owner/operator of Jellystone through alter egos GEP and GEPM. *Id.* ¶ 179. Count I (general negligence) makes no direct reference to "alter egos," which might suggest that it was not based on that theory.

But Count I doesn't rule out an alter-ego premise either. Count I incorporates all preceding paragraphs, including the alter-ego allegations. *Id*. ¶ 156. And paragraph 157 says the entity Defendants "and Ricky Jenkins jointly owned, controlled, and/or operated Jellystone." If so, that would seemingly depend on an alter-ego theory. Staying within Count I but moving to paragraph 165, it refers to Jenkins as one of the "entities" that breached their duties. *Id*. ¶ 165. With the heavy reliance on alter ego throughout the SAC, referring to Jenkins as an entity might suggest that Plaintiffs were asserting a negligence claim against him individually under that theory. *See, e.g.*, *id*. ¶ 13 (asserting that "Defendants GEP and GEPM were alter egos of Defendants TJO 10x10, and Ricky Jenkins *individually*") (emphasis added).

Determining whether Count I was intended against Jenkins for his own alleged fault would have been easier had Plaintiffs explained what he did wrong. But paragraph 165 makes no averments specific to Jenkins. It instead lumps his alleged fault in with Defendants TJO and TJO Mgmt. Plaintiffs say that's okay because they all did the same thing. But the "quintessential shotgun pleading" "fail[s] to distinguish between the actions of named defendants." *Sahlein v. Red Oak Cap., Inc.*, No. 3:13-CV-67-DMB-JM, 2014 WL 3046477, at *3 (N.D. Miss. July 3, 2014) (cleaned up) (quoting *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001)). And "[t]his Court has repeatedly warned attorneys against such pleading practices"

5

because they violate Federal Rule of Civil Procedure 8(a)(2). *Payne v. Univ. of S. Miss.*, No. 1:12-CV-41-KS-MTP, 2015 WL 1482636, at *4 (S.D. Miss. Mar. 31, 2015) (collecting cases).

Also, Plaintiffs point to no pleaded facts that would plausibly state a claim against Jenkins for his alleged conduct. Though the Federal Rules of Civil Procedure do not require "detailed pleading," they do require a plaintiff who claims negligence to plead sufficient facts so "a legal duty appears" on the face of the complaint. *City of Daytona Beach v. Gannett Fleming Corddry & Carpenter, Inc.*, 253 F.2d 771, 772 (5th Cir. 1958). *See Gros v. Warren Props., Inc.*, No. CIV. A. 12-2184, 2012 WL 5906724, at *6 (E.D. La. Nov. 26, 2012) (holding under Rule 8 pleading standard of *Twombly*/*Iqbal*, plaintiff cannot merely assert a duty exists but must plead facts showing a duty).

The legal duties that apply to individuals within corporations are discussed in the next section, but for now the Court notes that Plaintiffs have not identified any factual allegations in the SAC that demonstrate the personal involvement necessary to trigger personal liability. Paragraph 165 lists ways Plaintiffs believe Jenkins, TJO, and TJO Mgmt. breached legal duties, but those limited facts do not state a plausible claim for personal liability in the corporate context. *See* § III(B). Without facts specific to Jenkins's role in the alleged torts, paragraph 165 is conclusory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs insist, however, that paragraph 165 is not conclusory because it is supported by facts they supplied in their summary-judgment briefs. Pls.' Surreply [497] at 9. But at this point, the Court is considering whether Plaintiffs pleaded a valid claim for personal liability against Jenkins. And under Federal Rules of Civil Procedure 8 and 12(b)(6), courts do not consider "matters outside the pleadings." Fed. R. Civ. P. 12(d). Legal briefs are not pleadings. Fed. R. Civ. P. 7(a).

6

For these reasons, the Court would have granted a Rule 12(b)(6) motion had Jenkins filed one. But treating the personal-negligence claim as a new claim presents an unclear choice under Fifth Circuit law. *Compare Pierce v. Hearne Ind. Sch. Dist.*, 600 F. App'x 194, 200 (5th Cir. 2015) (per curiam) (holding that new claims raised in response to dispositive motion "should be construed as a request for leave to amend the complaint") *with Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.") (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)) *and Jackson*, 3 F.4th at 189 (noting that construing new claims as a motion for leave to amend is normally reserved for pro se plaintiffs).

And there is one more wrinkle. The rule against raising new claims in response to dispositive motions applies to new legal theories as well. *See McCleery v. Speed*, No. 22-30213, 2023 WL 1099149, at *4 (5th Cir. Jan. 30, 2023) (citing *Cutrera*, 429 F.3d at 113). So even if paragraph 165 could be read to properly plead a personal-negligence claim against Jenkins, Plaintiffs' summary-judgment briefs go well beyond the three theories listed in that paragraph—failing to (1) review or assess the policies and procedures; (2) ensure the companies they formed were adequately staffed; and (3) ensure that GEP was adequately staffed. SAC [407] ¶ 165. Any legal theories beyond these constitute new claims.

The Court will take a pragmatic approach. As to any claims argued in the summary-judgment briefs that exceed paragraph 165, the Court will not view them as a motion to amend because the amendment deadline has expired, Plaintiffs have had extended opportunities to amend, and the claims are futile. And in any event, the amendment approach is doubtful. *See Jackson*, 3 F.4th at 189 ("[I]t's unclear how cases like *Pierce* are consistent with our rule of

7

orderliness and our numerous published precedents holding litigants forfeit arguments raised for the first time at summary judgment."). The Court will, however, examine the new theories as an alternative ruling.[1]  As for the claims listed in paragraph 165 of the SAC, the Court will assume without deciding that they are not new claims for personal liability because the issue is closer and they fail under Rule 56 anyway.

But that does not mean Jenkins waived the opportunity to address them in reply as Plaintiffs suggest. Pls.' Resp. [456] at 1. True enough, this Court typically "refuse[s] to consider arguments raised for the first time in reply briefs." *Washington v. Jackson State Univ.*, No. 3:17-CV-426-DPJ-FKB, 2017 WL 3441180, at *3 (S.D. Miss. Aug. 9, 2017) (quoting *Gillaspy v. Dall. Indep. Sch. Dist.*, 278 F. App'x. 307, 315 (5th Cir. 2008)). But here, Plaintiffs failed to put Jenkins on notice that he should address them. In any event, the Court's general practice on waiver is discretionary and based on the prejudice caused when a party is "not given the

---

[1] Jenkins did not try the claims Plaintiffs now argue by consent. *See* Pls.' Surreply [497] at 16 (citing Mississippi Rule of Civil Procedure 15(b) and a reference work on the Mississippi Rules). Under Federal Rule of Civil Procedure 15(b)(2), "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." "Express consent to try such issues rarely presents problems; implied consent, however, is much more difficult to establish since it depends on whether the parties recognized that an issue not presented by the pleadings entered the case at trial." *Jimenez v. Tuna Vessel Granada*, 652 F.2d 415, 421 (5th Cir. 1981). "[W]hen 'both parties squarely address[ ] [a claim] in their summary judgment briefs,' it may be argued that the complaint was constructively amended." *Handzlik v. United States*, 93 F. App'x 15, 17 (5th Cir. 2004) (quoting *Whitaker v. T.J. Snow Co.*, 151 F.3d 661, 663 (7th Cir. 1998)). Plaintiffs do not allege express consent, and they acknowledge that Jenkins's initial Rule 56 brief did not address this claim. Pls.' Surreply [497] at 17. He did address it in reply, but that cannot be viewed as a consent because he argued that the claims were never pleaded and should be dismissed. Nor would Plaintiffs' reliance on discovery requests and correspondence show consent. Even assuming they might suggest that Jenkins knew the theories pleaded in paragraph 165 applied individually to him, they would not show consent for theories not reflected in that paragraph. Finally, as for the Mississippi case Plaintiffs cited, its loose approach doesn't fit with the Fifth Circuit's firm warning that "trial of unpled issues by implied consent is not lightly to be inferred under Rule 15(b)." *Jimenez*, 652 F.2d at 422.

opportunity to respond" to the delinquent argument. *Id.* Here, there is no prejudice because the parties fully briefed this issue in the reply, surreply, and surrebuttal. On to the merits.

B. Whether the Individual-Negligence Claim Survives Summary Judgment

Assuming this is not a new claim that should be dismissed for that reason, the analysis first turns to what legal duty Jenkins owed Plaintiffs. Plaintiffs offer a few options, the broadest of which relies on the general duty of reasonable care such that Jenkins had "[t]he duty to do *something* to ensure the safety of the water." Pls.' Surreply [497] at 13; *see also id.* at 12 (citing *Dr. Pepper Bottling Co. of Miss. v. Bruner*, 148 So. 2d 199, 201 (Miss. 1962)). But Plaintiffs offer no legal authority applying this duty to a corporate officer or owner like Jenkins.

That more precise issue is addressed in Plaintiffs' opening memorandum. As they acknowledge, "the general rule is well established that when a corporate officer directly participates in or authorizes the commission of a tort, even on behalf of the corporation, he may be held personally liable." Pls.' Surreply [456] at 10 (quoting *Miss. Printing Co. v. Maris, West & Baker, Inc.*, 492 So. 2d 977, 978 (Miss. 1986)). "The thrust of the general rule is that the officer to be held personally liable must have some direct, personal participation in the tort, 'as where the defendant was the "guiding spirit" behind the wrongful conduct . . . or the "central figure" in the challenged corporate activity.'" *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cir. 1985) (applying "general rule" followed by Mississippi) (quoting *Escrude Cruz v. Ortho Pharm. Corp.*, 619 F.2d 902, 907 (1st Cir. 1980)); *see also Turner v. Wilson*, 620 So. 2d 545, 548 (Miss. 1993) (quoting *Mozingo* with approval).

*Mozingo* is instructive. There, the plaintiff sued the president of a crane manufacturer (Way) for injuries caused by the crane. 752 F.2d at 171. Way had relevant concerns about the crane's safety, and the plaintiff argued that he failed to pursue those concerns and make the

9

product safer. *Id.* at 173. The Fifth Circuit affirmed a directed verdict for Way because he did not manufacture the product and appeared to have "little or nothing at all to do with their production." *Id.* at 173–74. The court concluded that "if Way can be held personally liable in this case, any corporate officer who fails to maintain an almost total ignorance of the products the corporation produces may be personally liable in the event a defective product is produced." *Id.* at 174.

So too here. Plaintiffs generally say Jenkins was "the boss," knew *E. coli* is dangerous, knew that there were issues with the Park's prior owner, and knew some equipment needed to be fixed. Pls.' Resp. [456] at 3. With that knowledge, they contend "Ricky Jenkins owed a duty to the Plaintiffs to do *something* to ensure the safety of the water attractions, but in fact elected to do nothing." Pls.' Surreply [497] at 3 (emphasis in original). But as in *Mozingo*, this is not enough. *Mozingo*, 752 F.2d at 174.

Aside from that general point, Plaintiffs' more specific theories fall short.[2] Starting with the theories found in paragraph 165, Plaintiffs say Jenkins, TRO, and TRO Mgmt. failed to (1) "review or assess the policies and procedures relating to water quality at the time that they acquired the franchise"; (2) "ensure that the companies they formed to formally own and operate the parks . . . were adequately staffed with employees knowledgeable about the risks"; and (3)

---

[2] Unlike in their other briefs, Plaintiffs take a shotgun approach to this motion, offering pages of facts and legal theories, not all of which consistently express the purported legal duty and the evidence supporting the alleged breach. Many of those facts are simply immaterial—like that Jenkins had the idea to buy the Park, arranged financing, and profited from his businesses. Other facts might be significant if somehow linked to Plaintiffs' claims. For example, they assert that Jenkins had the duty to "act with reasonable care in the selection of industry consultants," Pls.' Surreply [497] at 13, yet they never argue that the retained consultant did anything wrong. The Court will not explore every issue and will instead focus on those that seem more pertinent.

"ensure that GEP was adequately staffed and otherwise prepared to operate the recreational water facilities in a safe manner."

As Jenkins notes, Plaintiffs would still have to show that acts like keeping the former staff caused the injuries. But setting causation aside, they must link these charges to some direct action by Jenkins. Plaintiffs try to do that in part by saying Jenkins was "the only member of GEP (the entity that technically 'operated' the park)" so "the decision to acquire turn-key properties so that he could carry over equipment, employees, and policies and procedures from the old business to the new, *was Ricky Jenkins's decision alone*." Pls.' Surreply [497] at 15–16. But Plaintiffs cite no evidence supporting that statement. And even if Jenkins were GEP's sole member, that doesn't mean he was its employee or that he was tasked with these relevant decisions. Indeed, he testified that he was not a GEP employee.[3]

In a similar vein, Plaintiffs try to establish Jenkins's role by arguing that he "has testified that he did nothing to ensure safety and further that he did not delegate that responsibility to anybody else." Pls.' Surreply [497] at 15. But again, they cite no evidence for this statement, and Jenkins's testimony contradicts it. According to Jenkins, he is "not the one in our business responsible for managing those risks." Jenkins Dep. [418-2] at 21. When asked who is responsible, he said, "Troy Sheppard is our chief operating officer and oversees all things management related," including "responsibility to assess risks[] [and] engage in risk management activities." *Id.*; *see also id.* at 26 (testifying that it was within "Troy Shepherd's purview" to task someone with "the safety aspects or the risk that would exist at the water

---

[3] Jenkins argues—supported by competent evidence—that he was not an employee or officer of GEP (the entity that owned the Park) and that he exercised no operational management function in connection with GEP. Jenkins Reply [486] at 8 (citing Jenkins Dep. [418-2] at 108; 111; 115–16; 118; 119; 144–45).

11

parks"). Unsupported arguments cannot defeat summary judgment. *TIG Ins. Co.*, 276 F.3d at 759.

What Plaintiffs need and lack is evidence that Jenkins was handling these issues on a more operational level, not merely that he was the ultimate boss and was aware of them. Like the president in *Mozingo*, who had little involvement in production of the injury-causing crane, Plaintiffs have not cited facts showing Jenkins was the "'guiding spirit' behind the wrongful conduct . . . or the 'central figure' in the challenged corporate activity." *Mozingo*, 752 F.2d at 174; *see also Est. of Hazelton ex rel. Hester v. Cain*, 950 So. 2d 231, 236 (Miss. Ct. App. 2007) (affirming summary judgment for company president and an administrator because they were not involved in "day to day management" and did not directly supervise or control the conduct that allegedly caused injury).

Going beyond what Plaintiffs say in paragraph 165, their most forceful assertion is that "Jenkins and Mr. Sheppard elected not to make certain of the 'fixes' or repairs that ended up playing a critical role in the cause of the subject outbreak, including most prominently the decision to leave the existing, undersized filters in place for both the pool and splash pad." Pls.' Resp. [456] at 6. The only time Plaintiffs cite record evidence to support this theory, they cite Sheppard's deposition. *Id.* (citing Sheppard Dep. [456-2] at 51). But that text contradicts their point.

For starters, Plaintiffs provided an excerpt from Sheppard's deposition, so the full context is unclear. But on the cited page, Sheppard seems to say a consultant offered two options to address water-quality issues and the Park picked one of them. Sheppard Dep. [456-2] at 51. In any event, the testimony Plaintiffs cite as proving Jenkins's role in these decisions never mentions Jenkins. Sheppard instead testified, "[T]hat was the decision that was made by me."

12

*Id.* The cited record undercuts Plaintiffs' argument, and the Court is under no duty to search the record for evidence supporting their theory. *Fuentes v. Postmaster Gen. of U.S. Postal Serv.*, 282 F. App'x 296, 300 (5th Cir. 2008).

There is no question Jenkins was heavily involved in acquiring the Park and was the ultimate "boss" as to the entities that owned and operated it. But to create liability for him personally, Plaintiffs need to create a fact question whether he had "direct, personal participation in the tort, 'as where [he] was the "guiding spirit" behind the wrongful conduct . . . or the "central figure" in the challenged corporate activity.'" *Mozingo*, 752 F.2d at 174. To do that, they "must identify specific evidence in the record and articulate the manner in which that evidence supports [his] claim." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). The record evidence they cite doesn't make that showing.

IV.    Conclusion

The Court has considered all arguments presented. Any not specifically addressed here would not affect the outcome. Plaintiffs have conceded Jenkins's motion as to alter egos and premises liability. The disputed claims are likewise dismissed. Ricky Jenkins's motion for summary judgment [418] is granted, and the Court dismisses him from this case with prejudice.

**SO ORDERED AND ADJUDGED** this the 16th day of December, 2024.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE